IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 14, 2021

**MELVIN KEITH BLACK v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-C-2138     Steve R. Dozier, Judge**

_____

**No. M2020-01316-CCA-R3-PC**

_____

The Petitioner, Melvin Keith Black, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in finding he received the effective assistance of counsel at trial.  Upon our review of the record, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Sam E. Wallace, Jr., Nashville, Tennessee, for the Appellant, Melvin Keith Black.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Glenn Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

I.     Trial

The Davidson County Grand Jury charged the Petitioner with one count of aggravated assault against Wanda Perry, the Petitioner's ex-girlfriend.  The evidence presented at trial showed that on June 6, 2017, Ms. Perry and the Petitioner were sending text messages to each other about the possibility of meeting for dinner.[1]  The Petitioner

_____

[1] We have gleaned these facts from the trial transcript which was introduced as an exhibit at the post-conviction hearing.

initially told Ms. Perry that he wanted to eat alone, but he later called and asked her to join him at Gerst Haus, a restaurant across the street from the Petitioner's residence.

When Ms. Perry arrived at the restaurant, she saw the Petitioner sitting at a table on the patio and joined him. A few minutes later, they began arguing, and Ms. Perry decided to leave. As she turned away from the Petitioner, Ms. Perry saw him raise a "pint glass" and felt something hit the back of her head. Ms. Perry testified that since the assault, she had suffered from residual skull pain.

On cross-examination, Ms. Perry denied throwing the Petitioner's drink on him during the argument. She agreed that she was discharged from the hospital at approximately 9:50 p.m. on the night of the assault and was given a prescription for Advil.

Kristy Gossman, a waitress at Gerst Haus, had just finished her shift and entered her car when she heard a "crash on the patio" and saw Ms. Perry holding her head. Ms. Gossman walked toward Ms. Perry, who was "crying and shaking and visibly upset." As Ms. Gossman began tending to Ms. Perry, the Petitioner left the patio area, and Ms. Perry stated that the Petitioner had "cracked a glass on her head." Ms. Gossman noticed a large knot "about half [the size of] a baseball on the back of [Ms. Perry's] head" and "shards of glass in [Ms. Perry's] hair." Another Gerst Haus employee called 911, and Ms. Gossman stayed with Ms. Perry until an ambulance arrived.

Medical personnel and police officers arrived on the scene, and Ms. Perry was transported to the hospital where she was diagnosed with a hematoma and a contusion on the back of her head.

Detective Michael Baron with the Metro Nashville Police Department responded to the scene and observed "Ms. Perry holding the top of her head" while medical personnel treated her. Ms. Perry appeared coherent but was shaken and visibly upset, and Detective Baron saw a "large knot on the top or back of her head." Ms. Perry was able to provide Detective Baron with the Petitioner's name and address, and Detective Baron obtained a warrant for the Petitioner's arrest. On cross-examination, Detective Baron agreed that, while he had taken some pictures of the scene, he did not photograph the patio layout or any glass on the ground. He also agreed that he did not collect any glass as evidence.

Following deliberations, the jury found the Petitioner guilty of the lesser-included offense of reckless aggravated assault, and the trial court sentenced the Petitioner as a Range IV, career offender to twelve years' incarceration with release eligibility after serving sixty percent of the sentence. Although the Petitioner initially filed a notice of direct appeal, he later moved to voluntarily dismiss the appeal.

## II.    Post-Conviction

Thereafter, the Petitioner filed a timely pro se petition for post-conviction relief, arguing, in part, that lead counsel and co-counsel were ineffective. Counsel was appointed, and an evidentiary hearing was held on August 13, 2020, during which the Petitioner, co-counsel, and lead counsel testified.[2]

The Petitioner testified that lead counsel and co-counsel were appointed to represent him on the aggravated assault charge. According to the Petitioner, he met with lead counsel four times but only spoke with co-counsel on the day before trial. Each time the Petitioner spoke with his attorneys, he insisted that he did not throw the glass at Ms. Perry. Instead, according to the Petitioner, after Ms. Perry threw the contents of the Petitioner's glass on him, she "took off running backwards and hit her head on a six-by-six post and fell to the ground." Regarding the broken glass, the Petitioner testified that Ms. Perry probably had the glass in her hand as she fell. Although the Petitioner's story never wavered, lead counsel did not think the jury would believe the Petitioner's version of events. At trial, during co-counsel's opening statement, the Petitioner became upset when co-counsel stated that the Petitioner had thrown the glass at Ms. Perry. During lead counsel's closing argument, she also stated that the Petitioner had thrown the glass. The Petitioner whispered to co-counsel that lead counsel had "just told [the jury that the Petitioner] was guilty." However, co-counsel told the Petitioner to calm down, so he "just went with it." The Petitioner testified that he had no idea that either co-counsel or lead counsel was going to stipulate that the Petitioner had thrown the glass at Ms. Perry.

Prior to trial, the Petitioner asked lead counsel to locate Tammy Shaffer, his waitress on the night of the incident. Ms. Shaffer had waited on the Petitioner several times and was familiar with him. Although Ms. Shaffer was not outside when Ms. Perry threw the drink on the Petitioner, she could have testified that the Petitioner's face and shirt were wet. Additionally, the Petitioner wanted lead counsel to take pictures of the patio at the restaurant as well as the size of the glass he was using, which was half the size of the glass the State introduced at trial.

Co-counsel testified that he served as second chair on the Petitioner's case. He met with the Petitioner "at least twice" before trial. Although the Petitioner insisted that Ms. Perry hit her head on a post, co-counsel and lead counsel informed him that the jury was unlikely to believe that story. Instead, they developed a strategy in which they would stipulate that the Petitioner threw the glass but argue for a lesser-included offense based on the evidence. On cross-examination, co-counsel testified that the Petitioner agreed to argue

_____

[2] It appears from the testimony at the evidentiary hearing that an amended petition was filed following the appointment of post-conviction counsel. However, the amended petition was not included in the record on appeal.

for the lesser-included offense. Co-counsel would not have gone to trial on a strategy to which the Petitioner did not agree.

Regarding the pint glass introduced at trial, co-counsel testified that he agreed to let it come in for a number of reasons. Specifically, co-counsel noted that because the Petitioner was charged with aggravated assault with a deadly weapon,[3] whether the glass was a deadly weapon became a factual issue at trial. Accordingly, co-counsel believed it would be beneficial to the Petitioner to show the smaller pint glass as opposed to the "giant fishbowl glasses" that Gerst Haus also used. When asked whether the Petitioner had asked co-counsel to locate Ms. Schaffer, co-counsel testified that he remembered discussing Ms. Shaffer but could not recall the contents or length of the discussions. Co-counsel agreed that Gerst Haus was no longer in business but that it was open at the time of the Petitioner's trial.

Lead counsel testified that she was appointed to represent the Petitioner prior to his preliminary hearing. Although the Petitioner was "very consistent" that he did not throw the glass at Ms. Perry, lead counsel did not think the jury would believe the Petitioner's claim that Ms. Perry ran backwards into a post. Because the Petitioner chose not to testify, lead counsel's trial strategy was to argue for a lesser-included offense. Therefore, lead counsel did not dispute that the Petitioner threw a glass but argued that the glass used during the assault was not a deadly weapon. On cross-examination, lead counsel agreed that, prior to trial, she and the Petitioner discussed the strategy of admitting that he threw the glass.

During lead counsel's trial preparation, the Petitioner was insistent that lead counsel find Ms. Shaffer, and in reviewing her file, lead counsel noted that her investigator had attempted to locate Ms. Shaffer approximately a month before trial but was unable to do so. Lead counsel testified that she stipulated to the glass introduced at trial by the State because she genuinely believed it to be the size of the glass used by the Petitioner.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the Petitioner argues that lead counsel and co-counsel were ineffective for failing to investigate and for stating during opening statement and closing argument that the Petitioner threw the glass. The State contends the post-conviction court properly denied the petition. Following our review, we agree with the State.

---

[3] The indictment alleged that the Appellant "intentionally or knowingly did cause bodily injury to Wanda Perry by the use or display of a deadly weapon, to wit: a heavy glass mug . . . ."

The Petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). This court will not reweigh or reevaluate evidence of purely factual issues. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this court reviews the Petitioner's post-conviction allegations de novo, affording a presumption of correctness only to the post-conviction court's findings of fact. Id.; Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the Petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the Strickland test must be satisfied. Id. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id.; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the Strickland test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at

694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

## I.      Opening Statement and Closing Argument

The Petitioner argues lead counsel and co-counsel were ineffective for admitting during the opening statement and closing argument that the Petitioner threw the glass at Ms. Perry. Specifically, the Petitioner contends he told both lead counsel and co-counsel that he did not throw the glass and that Ms. Perry hit her head on a post. The State contends the post-conviction court properly found that lead counsel and co-counsel were not ineffective for telling the jury that the Petitioner threw the glass at Ms. Perry.

During his opening statement, co-counsel made the following statement:

[O]n June 6th, of 2017, Wanda Perry threw a drunk (sic) into [the Petitioner's] face. [The Petitioner] overreacted, he hurt Ms. Perry. He was wrong, but he did not commit an aggravated assault.

. . . .

At that point, [the Petitioner] having just been wetted, assaulted in that way, reacted poorly. And he grabbed the glass, he picked it up and Ms. Perry turned and [the Petitioner] threw that glass in her direction and it hit her in the head.

Later, during closing argument, lead counsel stated:

And after Ms. Perry through (sic) [the Petitioner's] drink all over his face and shirt, he overreacted. In a split second he did something careless, something he can never take back. He through (sic) the glass, whose contents had just been thrown all over him. And he is taking responsibility for that. He is acknowledging those actions. But it doesn't mean that he's guilty of aggravated assault.

At the evidentiary hearing, both lead counsel and co-counsel agreed that the Petitioner adamantly denied throwing the glass at Ms. Perry and insisted she ran backwards into a post after throwing a drink in the Petitioner's face. However, co-counsel and lead counsel thought the jury was unlikely to believe the Petitioner's story. Accordingly, lead counsel and co-counsel developed a defense strategy in which they admitted that after Ms.

Perry threw the contents of the glass on the Petitioner, he "overreacted" and threw the glass. They argued that the glass was not a deadly weapon in the hopes that the jury would convict on a lesser-included offense. According to both lead counsel and co-counsel, the Petitioner was aware of this strategy prior to trial.

The post-conviction court accredited the testimony of lead counsel and co-counsel, and nothing in the record preponderates against the factual findings of the post-conviction court. See Tidwell, 922 S.W.2d at 500. The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. Id. We note that counsel's strategy was successful in that the Petitioner was convicted of a lesser-included offense. Furthermore, the trial court had instructed the jury to follow the law, not the opinions of the attorneys, and we presume the jury followed those instructions. State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004). The Petitioner is not entitled to relief on this issue.

## II.      Failure to Investigate

The Petitioner argues lead counsel and co-counsel failed to properly investigate his case. Specifically, the Petitioner contends trial counsel failed to determine the nature and size of the glass he was using, as well as, the layout of the patio. The Petitioner also asserts that trial counsel failed to locate Ms. Shaffer, who could have testified about the Petitioner's shirt being wet following the incident. The State contends the post-conviction court properly found that lead counsel and co-counsel were not ineffective for failing to investigate.

At the evidentiary hearing, the Petitioner testified that he asked lead counsel to locate Ms. Shaffer so that she could testify regarding her recollection of the events on the night of the assault. The Petitioner also wanted lead counsel to take pictures of the patio at Gerst Haus as well as the glass the Petitioner was using that night, which the Petitioner insisted was half the size of the glass introduced pursuant to the stipulation. Co-counsel remembered discussing Ms. Shaffer with the Petitioner but could not recall the nature of the discussions. Co-counsel also testified he agreed to let the State introduce the pint glass during trial because it was much smaller than the "fishbowl glasses" Gerst Haus also used, and co-counsel believed the smaller glass would support the defense's argument that the glass was not a deadly weapon. Lead counsel testified that an investigator with her office attempted to locate Ms. Shaffer prior to trial but was unable to find her. Lead counsel also testified that she allowed the State to introduce the pint glass because she believed it was the size of the glass used by the Petitioner.

As discussed above, the post-conviction court accredited lead counsel and co-counsel's testimony, and nothing in the record preponderates against its factual findings. See Tidwell, 922 S.W.2d at 500. The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. Cooper, 847 S.W.2d at 528. Deference is given to sound tactical decisions made after adequate preparation for the case. Id. Furthermore, although the Petitioner argues trial counsel should have located Ms. Shaffer or introduced evidence, such as photographs of the patio and the glass, the Petitioner failed to present Ms. Shaffer or the photographs at the post-conviction hearing and, therefore, cannot establish prejudice. See Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). The Petitioner is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the Petitioner post-conviction relief.

_____
NORMA MCGEE OGLE, JUDGE